IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **ANDREW R. LOPEZ**, | ) | **CV F 04-5531 OWW WMW HC** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| | ) | **FINDINGS AND** |
| **WARDEN, CALIFORNIA STATE** | ) | **RECOMMENDATIONS RE** |
| **PRISON AT CORCORAN,** | ) | **PETITION FOR WRIT OF** |
| | ) | **HABEAS CORPUS** |
| | ) | |
| **Respondent.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

Petitioner is a state prisoner proceeding pro se in a petition for writ of habeas corpus

pursuant to 28 U.S.C. section 2254.  The matter was referred to a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

## PROCEDURAL HISTORY

On June 6, 1992, Petitioner was sentenced to serve a term of seventeen years to life in

prison, based on his conviction of one count of murder in the second degree.  Approximately

ten years later, Petitioner attended his initial parole consideration before the Board of Prison

Terms ("the Board").   The Board concluded that Petitioner was not suitable for parole and denied parole for five years.  Following the Board's finding of unsuitability, Petitioner's administrative appeal challenging the Board's decision was denied on the merits on April 8, 2003.

Petitioner filed a petition for writ of habeas corpus challenging the decision of the Board with the Superior Court for the County of Kern, which transferred the petition to the Superior Court for the County of Stanislaus.  The court denied the petition on June 16, 2003. Petitioner then filed a petition for writ of habeas corpus with the California Court of Appeal and California Supreme Court, which summarily denied the petition on July 10, 2003 and February 18, 2004, respectively.

Petitioner filed the present petition on March 11, 2004.  Respondent admits that Petitioner has exhausted his state court remedies with respect to the claims raised in this petition.

**STANDARD OF REVIEW**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment.

1   White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004); Sass v. California Board of Prison

2   Terms, 376 F.Supp.2d 975 (E.D. Cal.2005); see 28 U.S.C. § 2254(a) (This court may

3   entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the

4   judgment of a State court only on the ground that he is in custody in violation of the

5   Constitution or laws or treaties of the United States.").

6       Under the AEDPA, an application for habeas corpus will not be granted unless the

7   adjudication of the claim "resulted in a decision that was contrary to, or involved an

8   unreasonable application of, clearly established Federal law, as determined by the Supreme

9   Court of the United States" or "resulted in a decision that was based on an unreasonable

10  determination of the facts in light of the evidence presented in the State Court proceeding."

11  28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

12       As a threshold matter, this court must "first decide what constitutes 'clearly

13  established Federal law, as determined by the Supreme Court of the United States.'" Lockyer,

14  538 U.S. at 71, quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established

15  Federal law," this court must look to the "holdings, as opposed to the dicta, of [the Supreme

16  Court's] decisions as of the time of the relevant state-court decision." Id., quoting Williams,

17  592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the

18  governing legal principle or principles set forth by the Supreme Court at the time the state

19  court renders its decision." Id.

20       Finally, this court must consider whether the state court's decision was "contrary to,

21  or involved an unreasonable application of, clearly established Federal law." Lockyer, 538

22  U.S. at 72, quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas

23  court may grant the writ if the state court arrives at a conclusion opposite to that reached by

24  [the Supreme] Court on a question of law or if the state court decides a case differently than

25  [the] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413; see

26  also Lockyer, 538 U.S. at 72.  "Under the 'reasonable application clause,' a federal habeas

27

28                                    3

1  court may grant the writ if the state court identifies the correct governing legal principle from
2  [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's
3  case." Williams, 529 U.S. at 413.

4      "[A] federal court may not issue the writ simply because the court concludes in its
5  independent judgment that the relevant state court decision applied clearly established
6  federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."
7  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask
8  whether the state court's application of clearly established federal law was "objectively
9  unreasonable."  Id. at 409.

10     Petitioner has the burden of establishing that the decision of the state court is
11  contrary to or involved an unreasonable application of United States Supreme Court
12  precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme
13  Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive
14  authority in determining whether a state court decision is objectively unreasonable.  See
15  Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597,
16  600-01 (9th Cir.1999).

17     AEDPA requires that we give considerable deference to state court decisions. The
18  state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by
19  a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002),
20  *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

21                              **DISCUSSION**

22     Petitioner contends that he was denied clearly established pre-hearing due process
23  rights and equal protection because he was not provided "the guaranteed pre-Board of Prison
24  Terms .   .   . due process protection."  He also contends that he was afforded ineffective
25  assistance of counsel in regard to his hearing before the Board.   Petitioner further contends
26  that he was denied a lawful and impartial hearing panel.  He furthermore contends that his

27

28                                    4

rights to due process and equal protection were violated "by the BPT and CDC's system of enforcement concerning hearing related rights.  Finally, Petitioner contends that CDC 115's were used in his hearing before the Board in violation of due process based on lack of prior fair notice.

The Fourteenth Amendment provides that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  In certain cases, a state law may create a liberty interest protected by the Constitution. In examining questions of procedural due process, federal courts employ a two-step inquiry: 1) whether there exists a liberty or property interest which has been interfered with by the State, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and 2) whether the procedures attendant upon that deprivation were constitutionally sufficient, Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *receded from and rejected on separate grounds*, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

Thus, the first question that must be answered is whether there exists a liberty interest protected by the Due Process Clause.  The relevant California statutory language is contained in  Penal Code Section 3041, which states, in relevant part:

> (a) One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and *shall normally set a parole release date* as provided in Section 3041.5.

> (b) The panel or the board, sitting en banc, *shall set a release date unless it determines* that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting . . . .

Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).  The Court of Appeal for the Ninth Circuit has held that California inmates do have a liberty interest in a parole date.  Sass v. California Board of Prison Terms, 461 F.3d 1123 (9th Cir. 2006).  Therefore,

this court must next analyze whether the deprivation of that interest in this case  violated

Petitioner's right to due process.  See Ky. Dep't Corr., 490 U.S. at 45, 460 (1989).   The

standard used in such an analysis is the "some evidence" standard enunciated in

Superintendent v. Hill, 472 U.S. 445, 454 (1985); see Jancsek v. Or. Bd. of Parole, 833 F.2d

1389, 1390 (9th Cir. 1987)(holding that the same process is due in the parole recision setting

that the Supreme Court outlined for the prison disciplinary setting in Hill).  To determine

whether the some evidence standard is met does not require examination of the entire record,

independent assessment of the credibility of witnesses, or weighing of the evidence.

Instead, the relevant question is whether there is any evidence in the record that could

support the conclusion reached by the disciplinary board."  Hill at 455-56.

The Board of Prison Terms decision provides in part as follows:

> [T]he Panel has reviewed all information received from the public and relied
> on the following circumstances in concluding that you are not suitable for parole and
> would pose an unreasonable risk of danger to society and a threat to public safety if
> released from prison.  The offense was carried out in an especially cruel a manner.
> The offense was carried out in an exceptionally cruel and callous, violent, brutal and
> cold-blooded manner. Victim was mutilated during the offense, stabbed 17 - - or
> excuse me - - 13 times.  The offense was carried out in a manner which demonstrates
> an exceptionally callous disregard for human life.  The motive for the crime was
> extremely inexplicable in relation to the offense.

In making its judgment based on the nature of the conviction offense, the Board cannot be

found to have acted arbitrarily.  The nature of the offense amounts to some evidence to

support the Board's determination.  Because of the existence of this evidence, Petitioner's

due process claims fail.

Petitioner also raises equal protection claims in connection with his denial of parole.

The Supreme Court has held that the equal protection clause means "that no State shall deny

to any person within its jurisdiction the equal protection of the laws, which is essentially a

direction that all persons similarly situated should be treated alike."  City of Cleburne, Texas

v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985); Clark v.

California, 123 F.3d 1267, 1270 (9th Cir. 1997). The first step in any equal protection

analysis is to identify petitioner's classification or group. <u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1187 (9th Cir. 1995). Petitioner must show that the law has been applied in a discriminatory manner on him or imposes different burdens on different groups. <u>Id</u>.; <u>Christy v. Hodel</u>, 857 F.2d 1324, 1331 (9th Cir. 1988). The second step requires the Court to determine the level of scrutiny with which the Court should review the statute. <u>Freeman</u>, 68 F.3d at 1187. Discrimination on the basis of race or national origin and discrimination that affects fundamental rights are subject to strict scrutiny. <u>Clark v. Jeter</u>, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914 (1988).

In this case, Petitioner has not identified his classification or group and has also not explained how the law was applied to him in a discriminatory manner or how it imposes different burdens on different groups. <u>See</u>, <u>Freeman</u>. Therefore, Petitioner's equal protection claims must fail.

Further, Petitioner raises claims of ineffective assistance of counsel in regard to his hearing before the Board. Ineffective assistance of counsel is based on the Sixth Amendment right to counsel, which exists "in order to protect the fundamental right to a fair trial." <u>Strickland v. Washington</u>, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A claim for ineffective assistance must meet the two-part test advanced by the <u>Strickland</u> court. First, petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, [petitioner] must show that the deficient performance prejudiced the defense. <u>Id</u>. at 687. In light of the above finding that there was sufficient evidence to support the Board's finding, the court concludes that Petitioner cannot show that any deficiency in counsel's performance prejudiced the outcome of the hearing. Accordingly, this claim presents no basis for habeas corpus relief.

Finally, Petitioner contends that he was denied an impartial hearing panel when he appeared before the Board. Petitioner complains that the panel consisted of only two

7

members, rather than three, which he argues was required under the then-existing version of Penal Code Section 5076.1.   Petitioner does not deny, however, that under Section 5076.1(c), no action could be taken by the Board unless a majority of the panel vote to grant parole.   Here, two panel members voted to deny parole to Petitioner.   Thus, he is unable to show prejudice.

In light of the above, the state court decisions upholding the Board's decision to deny parole to Petitioner  were neither contrary to, nor did they involve an unreasonable interpretation of clearly established Federal law as determined by the Supreme Court of the United States.   28 U.S.C. § 2254(d).   Accordingly, this petition presents no basis for habeas corpus relief.

Based on the foregoing, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED and that judgment be entered for Respondent.

These Findings and Recommendation are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).IT IS SO ORDERED.

**Dated:   January 19, 2007**                **/s/  William M. Wunderlich**
mmkd34                                        UNITED STATES MAGISTRATE JUDGE